312 So.2d 883 (1975)
Ruth Elizabeth John HOLLADAY
v.
FIDELITY NATIONAL BANK OF BATON ROUGE and W. Leroy Ward, Jr., et al.
No. 10241.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
*885 Karl W. Cavanaugh, Denham Springs, Charles M. Bass, Jr., Robert H. Abbott, III, Baton Rouge, for appellant.
Victor A. Sachse, Breazeale, Sachse & Wilson, Baton Rouge, for Fidelity Nat. Bank, W. Leroy Ward, Jr., and Frank S. Craig.
Ashton L. Stewart, Baton Rouge, for Wm. Tait Baynard, Jr., Alfred Scott John Baynard and G. Dupre Litton.
Before LANDRY, BLANCHE and YELVERTON, JJ.
BLANCHE, Judge.
Plaintiff-appellant, Ruth Elizabeth John Holladay, hereinafter referred to as settlor, created and established two trusts, (hereinafter referred to as the Louisiana trust and the Texas trust) of which she is the sole income beneficiary. The trusts further provided that in the event of her death, the corpus of the trusts and accumlated income, if any, would be paid to her nephews, William Tait Baynard, Jr. and Alfred Scott John Baynard,[1] in equal proportions. The Louisiana trust was established on April 14, 1966 and named the Fidelity National Bank of Baton Rouge, defendant-appellee, as trustee. The Texas trust was established on the same day and named W. Leroy Ward, Jr., defendant-appellee, and Edward H. Sutter, as trustees. These defendants were president and trust officer of the Fidelity National Bank. After Sutter terminated his employment with the bank, settlor named Frank S. Craig, Jr., defendant-appellee, also an officer of the bank, as trustee. G. Dupre Litton, defendant-appellee, was appointed by settlor as attorney to represent the trustee, or any successor trustee.
The settlor commenced this proceeding against the above-named defendant-appellees to have them removed as trustees and trust attorney of the two trusts and to modify the two trust instruments in certain respects. Relief was sought on the grounds that the trustees had breached their duties to settlor in the following respects: (1) failure to maintain confidentiality of the trust affairs; (2) by placing non-income producing property originally owned by trustee Ward in the income producing Louisiana trust; (3) failure to record the Louisiana trust instruments as required by law; (4) failure to administer the Louisiana trust as reasonable and prudent men; (5) failure to furnish information to plaintiff-appellant; and (6) improper delegation of trustee duties. The trial court refused to remove the defendant-appellees as trustees and trust attorney of the respective trusts. The court did, however, modify the trust instrument in certain respects, the principal one, for the purposes of this decision, being the revocation of an agency agreement of defendant-appellees, Ward and Craig, as trustees of the Texas trust, with defendant-appellee, Fidelity Bank of Baton Rouge. The defendant-appellees, Fidelity Bank, Craig and Ward, have answered the appeal, complaining of the judgment insofar as it abrogated the agency agreement between the parties Ward and Craig as trustees with the Fidelity Bank.
Settlor relies on several articles of the Louisiana Trust Code as the statutory authority for removal of the trustees. Principally, her argument centers around the relationship between the trustee and beneficiary of the trust, as expressed in R.S. 9:1731. This article establishes a fiduciary relationship between the trustee and beneficiary and consequently subjects the fiduciary to the highest degree of fidelity *886 and undivided loyalty unto the beneficiary with regard to their administration of the trust for the benefit of settlor. Also relied upon are R.S. 9:2082, providing that "a trustee shall administer the trust solely in the interest of the beneficiary" and R.S. 9:2081, which states that "a violation by a trustee of a duty he owes to a beneficiary as trustee is a breach of trust." R.S. 9:1789 provides that "a trustee may be removed in accordance with the provisions of the trust instrument or by the proper court for sufficient cause shown,".
In short, the trust instruments do not provide for the removal of the trustees, and on the trial of the case, no cause was shown for removal. We affirm.

CONFIDENTIALITY
The duty of a trustee to treat with confidentiality matters pertaining to his administration of the trust is implicit in the trust relationship which mandates that he shall administer the same solely in the interest of the beneficiary, L.S.A. R.S. 9:2082. Whether a breach of confidentiality conflicts with this interest or adversely affects that relationship is a question of fact. The trial court found settlor's complaints in this regard to be without substance, and with this finding, we are in complete agreement.
Settlor complained that appellee Sutter, the Fidelity Bank trust officer, had furnished W. T. Baynard, Jr., in January of 1967, a statement of all income received by the bank under an agency agreement made by settlor with the bank before the trust was established, and under the trust after it was established, for the year 1966. The trial judge found that settlor had relied upon Mr. Baynard, her brother-in-law and confidant, in many instances, and that the information was purely for her tax return for that year and used for that purpose. Additionally, settlor received a copy of the letter, and no complaint was made by her to that letter for a number of years.
Settlor also complained that the attorney for the trust, G. Dupre Litton, had given information to her brother-in-law, William T. Baynard, Jr., of the fact that she had written the Fidelity Bank requesting the resignation of the trustees. Shortly after Baynard was so informed, he called settlor protesting this action. The trial judge found that because of the relationship of Mr. Litton, Mr. Baynard and settlor's family, the foregoing would not amount to any great breach of confidentiality. He stated in his oral reasons for judgment, "These people had been dealing with each other as members of a family, as counsel, as client, and in a business sense. All of them were involved and the disclosure would not, in the opinion of this Court, cause any great concern. Of course, Mr. Craig, Mr. Ward and Fidelity National Bank were not a part of that disclosure in any event, and insofar as it being a cause for removal, it would relate only to Mr. Litton as attorney for the respective trusts."
The third breach of trust relates to settlor's having heard the status of her trust account discussed in the restroom at the Fidelity National Bank of Baton Rouge, apparently by employees of the bank. Settlor did not know the employees but pointed them out to Mr. Sutter.
We do not regard restroom discussions of settlor's business affairs by employees of the bank as proper, but in the instant case do not regard such discussions as having adversely affected the best interests of the beneficiary.
Considering the close nature of the relationships between the parties, the triviality of the charges, and the length of time before any complaint was made concerning them, we are not inclined to view them as acts which in any way affected the settlor's interests.

*887 FAILURE TO FURNISH INFORMATION TO SETTLOR
The Louisiana Trust Code at R.S. 9:2089 makes the trustee's duty to furnish information to the beneficiary mandatory.[2] In this connection relator stated that she requested in December of 1971 that she be furnished with a copy of the Louisiana trust instrument to which defendant-appellee Fidelity never responded. She also complains of other requests which were not honored. The trial court's finding in this regard is expressed as follows:
"To the contrary, a preponderance of the evidence shows that Mrs. Holladay [settlor] was annually furnished an accounting of the respective trusts. At one point, she complained that she had not been supplied with a copy of the trust instrument and then later Mrs. Holladay [settlor] acknowledged that she did, in fact, have a copy but simply misplaced it."

SELF-DEALING
Settlor has complained that the purchase of a home by her from defendant-appellee Ward and the subsequent placing of that home in the Louisiana trust constituted an act of self-dealing which would be sufficient cause for the removal of the trustees. Appellee Ward was named in the Texas trust agreement as a trustee of the Texas trust, and being an officer of the Fidelity Bank, which is the trustee of the Louisiana trust, it is alleged that he was in some manner dealing with himself in permitting this home to be purchased by settlor with funds other than trust funds and thereafter placed by her into the Louisiana trust. The transaction was in the form of cash sale from the defendant-appellee Ward and his wife, Naomi Ward, to settlor, and thereafter a donation by settlor of the property to the Louisiana trust.
The evidence shows that no part of the trust corpus was used for the purpose of buying this home. When settlor first entertained the idea of purchasing the Ward home she prevailed upon the trustees to have the Louisiana trust provide for the purchase price. Appellees Ward and the Fidelity Bank declined to allow settlor to purchase the home with funds from this trust for fear that such a transaction would indirectly constitute self-dealing in violation of R.S. 9:2085.
R.S. 9:2085 expressly prohibits acts of self-dealing with a trust by trustee in the following language:
"A corporate trustee shall not directly or indirectly buy or sell property for the trust from or to itself or an affiliate, or from or to a director, an officer, or an employee of itself or an affiliate, unless the trust instrument provides otherwise."
To overcome the obstacle of the trustees' refusal to purchase a home for settlor with trust funds, settlor's brother-in-law, William T. Baynard, Jr., who had been helping her select a home, went to settlor's mother, Mrs. Cornelia Cross John, and prevailed upon her to make a donation to her daughter in a sum sufficient to enable settlor to purchase the home. After this donation, settlor purchased the house and placed it in trust for the same reason that the rest of her separate properties had been placed in trust, i.e., for her own financial security.
We find it unusual that settlor would complain that the trustees committed a breach of their fiduciary relationship with her after trustees had refused to permit the purchase of the house by the trust for the very reasons of which she now complains. Surely, the trustees could have no control over settlor's mother with regard to *888 the donation to her daughter or, for that matter, over settlor with regard to the purchase of her home with her own private funds. Settlor argues that because of the status of appellee Ward as trustee of the Louisiana trust and an officer of the Fidelity Bank, that the Louisiana trust could not validly acquire the property. A refusal by the trustee to accept the property from settlor after its purchase would have been ridiculous and in our opinion a refusal to act in settlor's interests.
We reject the argument that the foregoing transaction constituted self-dealing as proscribed by R.S. 9:2085.

FAILURE TO RECORD THE TRUST INSTRUMENT
R.S. 9:2092 provides that if at any time the trust property includes immovable property, the title to which must be recorded in order to affect third parties, a trustee shall file the trust instrument for record in each parish in which the property is located. Initially, the trust instrument was not recorded, and even after the acquisition of settlor's home, the trustee did not record the sale. Defendant-appellee Fidelity offers the argument that there was, in fact, no reason to record this particular trust instrument. The trial court, in commenting on this failure, stated:
"At one point in the deposition of Mrs. Holladay [settlor], she stated that it was not her desire that it be recorded at the time but that after she understood other things she felt that since the law required it, it should be done. We understand that this recordation has now taken place. The reason. it was not recorded seems to this Court to be a logical one. There were testamentary beneficiaries named and while Mrs. Holladay [settlor] has now decided that she wants it recorded and it has been recorded, it would seem that the bank was in good faith in attempting to act in her best interest prior to the acquisition of the property and thereafter by not recording the entire trust instrument. The act by which the house was placed in trust was recorded and this certainly put all third parties on notice that there was a trust involved and that it had received title to the subject property."

ADMINISTRATION AS A PRUDENT MAN
R.S. 9:2090 provides that, "A trustee in administering a trust shall exercise such skill and care as a man of ordinary prudence would exercise in dealing with his own property." Settlor complains of the investment policy of the bank in retaining low yield municipal bonds in the trust for two or three years after settlor's income from the Texas trust had declined; and to the acceptance of settlor's home as a nonincome producing asset. These acts are regarded as a lack of skill in administering the trust.
The charges are without merit. The production of income is not the sole purpose of the trust. The financial security occasioned by the placing of settlor's home in the trust is a valid objective of the trust and was the consequence of settlor's own desire.
With regard to the substitution of high yield securities when the income from the Texas trust declined, we find, as suggested by counsel for appellees, that the test is not that the trustee must always have his judgment vindicated by the market, but that he exercise such skill and care as a man of ordinary prudence would exercise in dealing with his own property.
The evidence convinces us that the investment practices of the trustee, the constant review of the trust portfolio by the directors, are sound and comply with the above statutory provision.

IMPROPER DELEGATION OF TRUSTEE DUTIES
This charge relates to the action of appellees Ward and Craig, who individually are trustees of the Texas trust, in entering *889 into an agency agreement with appellee, Fidelity Bank, whereby the bank was appointed as an agent to perform ministerial duties in connection with the Texas trust. The trial judge found that even though the trust agreement provided for the appointment of an agent to assist in the affairs of the Texas trust, the net effect of such an appointment was to circumvent Texas law and to do indirectly that which could not be done directly. Texas law prohibited corporations such as the bank from serving as trustees of any trust containing Texas property unless the corporation is licensed to do business in Texas or unless the state in which the corporation is domiciled has a reciprocal agreement with Texas, Article 105A of the Texas Probate Code, V.A.T.S.
The Fidelity Bank is not qualified to do business in Texas, and Louisiana has not passed any reciprocal legislation to allow Texas banks or trust companies to serve in a like fiduciary capacity in Louisiana without qualifying to do business under our laws.
The evidence leaves no doubt but that the Fidelity Bank is in fact settlor's true trustee and the only reasons for the appointment of the bank officers as trustees of the Texas trust was to avoid the expense of qualifying to do business in the state of Texas.
No doubt the foregoing was inspired for settlor's benefit and in accordance with the provisions of the trust agreement, but we are unable to give our approval to the practice, notwithstanding the fact that Texas has not complained.
For the above reasons, the decision of the Nineteenth Judicial District Court in refusing to remove the trustees and the attorney for the trusts is correct, and the decision is in all respects affirmed. All costs are to be paid by plaintiff-appellant from the trust funds established by her.
Affirmed.
NOTES
[1] The nephews were later made parties to the suit as a result of an exception claiming that they were indispensable parties, but no action was sought as against them by settlor.
[2] R.S. 2089. A trustee shall give to a beneficiary upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and permit him, or a person duly authorized by him, to inspect the subject matter of the trust, and the accounts, vouchers, and other documents relating to the trust.